# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| RYAN L. SWICK, and MARY M. SWICK, legal representatives of their deceased minor child, J.R.S., | |
| | No. 13-526V |
| | Special Master Christian J. Moran |
| Petitioners, | |
| | Filed: October 22, 2018 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' fees and costs; reasonable basis |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Richard H. Moeller, Moore, Heffernan, Moeller, Johnson, & Meis, LLP, Sioux City, IA, for Petitioners;
Ryan D. Pyles, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

Ryan and Mary Swick (the "Swicks") did not prevail on the claim they brought in the National Childhood Vaccine Injury Compensation Program on behalf of their child, J.R.S., who died 17 days after receiving a vaccination. They are now seeking an award for attorneys' fees and costs. The undersigned finds that the Swicks's claim had reasonable basis until the Findings of Fact were issued on January 7, 2016. For work performed before this date, and, some other discrete work that occurred after that date, the Swicks are entitled to attorneys' fees and costs in the amount of $57,376.49.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. This means the decision will be available to anyone with access to the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

*   *   *

## I. Procedural History

J.R.S. passed away on August 11, 2011. About one year later, the Swicks retained Mr. Moeller. Exhibit 72 ¶ 3 (counsel's affidavit). Mr. Moeller gathered medical records and consulted with at least four experts about opining on the case.

The petition was filed on July 29, 2013, along with J.R.S.'s medical records. Exhibits 1-6. The Swicks then filed an affidavit from Ms. Swick and more medical records in the following months. Exhibits 7-10.

The Swicks filed the first report from their expert, Dr. Walter Kozachuk, on January 6, 2014. Exhibits 11 (report), 12 (curriculum vitae). The report contained approximately 11 pages of text, not including several pages of citations. The first five pages exclusively addressed sudden infant death syndrome ("SIDS"). On pages 6 and 7, Dr. Kozachuk stated that his recitation of J.R.S.'s clinical course is "according to the family." Dr. Kozachuk did not cite any records, such as pediatrician records or police reports, to support his recitation. Dr. Kozachuk discusses the autopsy report in detail. Ultimately, Dr. Kozachuk concluded that the autopsy report did not support SIDS as the cause of J.R.S.'s death, but suggested that additional neuropathological studies could be done to rule out a diagnosis of SIDS more definitively. The second part of the report discussed posterior reversible encephalopathy syndrome (PRES).

On February 14, 2014, the Secretary filed his Rule 4 report concluding that the Swicks were not entitled to compensation on three grounds. First, based on Ms. Swick's blog posts that the Secretary submitted with his report, the Secretary questioned the accuracy of Ms. Swick's assertions in her affidavit. Resp't's Rep. at 7-8 & exhibits A, B (blog posts). Second, the Secretary concluded that Dr. Kozachuk's report was "insufficient" "as a matter of law" because those unsubstantiated assertions were the basis of the report. Id. at 8-9. Third, the Secretary argued that Dr. Kozachuk's report was speculative due to his lack of expertise in the primary subjects of his report, immunology and pathology. Id. at 9-10.

The Secretary's enumerated issues served as the basis for a status conference on March 18, 2014. Based on the issues discussed during the status conference, in compliance with an order, the Swicks filed a status report on May 20, 2014, responding to the Secretary's points. In the status report, the Swicks argued that

Ms. Swick's affidavit could supply a foundation for their expert report. The Swicks now rely on this status report as part of their argument for reasonable basis.

The Swicks then filed a second expert report from Dr. Kozachuk on August 19, 2014, to further respond to the Secretary's Rule 4 report. Exhibit 13. Dr. Kozachuk reiterated the points made in his first report and again suggested that additional autopsy studies were required to determine the cause of J.R.S.'s death.

A fact hearing was held on October 31, 2014, to resolve factual discrepancies for the time period from J.R.S.'s vaccinations until his death. Following the parties' submissions of proposed findings of fact, the undersigned issued Findings of Fact on January 7, 2016.

The Swicks then submitted another report from Dr. Kozachuk (exhibit 21), but the core of his opinion did not change despite the Findings of Fact. After some efforts to obtain an opinion from another expert, the Swicks were unable to retain another expert. The Secretary submitted an expert report from Dr. Michael Kohrman disputing much of Dr. Kozachuk's opinion. Exhibit E. After the Secretary presented Dr. Kohrman's opinion, the Swicks did not submit any more expert reports.

The Swicks stated that an entitlement hearing would not result in any new evidence, so the parties agreed to submit the case on the papers. The Swicks and the Secretary each filed a brief in support of their positions on entitlement. A decision denying entitlement was issued on February 26, 2018. Decision, 2018 WL 1514453 (Feb. 26, 2018).

On April 4, 2018, the Swicks filed an abbreviated motion for attorneys' fees and costs requesting $87,173.24. In his response, the Secretary deferred to the undersigned's discretion regarding the calculation of reasonable attorneys' fees and costs, but generally raised the issue that petitioners can lose reasonable basis, a prerequisite for an award of attorneys' fees and costs, during the course of litigation. The Swicks filed a more robust reply setting forth their position on reasonable basis.

On April 30, 2018, the undersigned ordered the Secretary to state his position on reasonable basis at certain critical moments during the case more specifically. The Secretary filed a memorandum detailing his position on reasonable basis at these moments and incorporated his Rule 4 report. The Swicks filed a reply.

This matter is now ripe for adjudication.

## II. Standards for Adjudication for Reasonable Basis

Even when a petitioner in the Vaccine Program does not prevail on his or her claim and does not receive compensation, a special master "may" award reasonable attorneys' fees and other costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1). As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).[2]

"Good faith" is a subjective standard. Id.; Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at * 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The Secretary has not challenged the Swicks's good faith here, and the undersigned has little doubt that the Swicks brought the claim with an honest belief that a vaccine injury occurred. For that reason, the petition's reasonable basis is the focus of this decision.

In contrast to good faith, reasonable basis is purely an objective evaluation of the evidence. Simmons, 875 at 636. Because evidence is "objective," the Federal Circuit's description is consistent with viewing the reasonable basis standard as creating a test that petitioners meet by submitting evidence. See Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660 at *12-13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (explaining that reasonable basis is met with evidence), mot. for rev. denied, 116 Fed. Cl. 276 (2014).

The Federal Circuit and judges of the Court of Federal Claims have provided some guidance as to what reasonable basis is *not*. A petition based purely on "unsupported speculation," even speculation by a medical expert, is not sufficient to find a reasonable basis. Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury"). As another example, when

---

[2] In his memorandum on reasonable basis, the Secretary did not cite Simmons, the most recent Federal Circuit opinion to address reasonable basis.

"the medical and other written records contradict the claims brought forth in the petition," a special master is not arbitrary in concluding that reasonable basis for the petition did not exist. Murphy v. Sec'y of Dep't of Health & Human Servs., 30 Fed. Cl. 60, 62 (1993), aff'd without opinion, 48 F.3d 1236 (Fed. Cir. 1995) (table).

Establishing the petition's reasonable basis in a motion for attorneys' fees and costs is the burden of the petitioners. Carter v. Sec'y of Health & Human Servs., 132 Fed. Cl. 372, 379 (2017) (citing Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 152 (2012) and McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 305 (2011)).

### III. Analysis of Reasonable Basis

The Secretary's April 9, 2018 response argued that a "claim may moreover 'lose' a reasonable basis during the pendency of the case." Resp't's Resp. at 1-2 (citing Chuisano, 2013 WL 6234660, at *21). Consistent with an approach that divides the litigation into phases, the June 4, 2018 order directed the Secretary to state a position regarding reasonable basis for different time periods.

The first period concerns the time from when petitioners first contacted Mr. Moeller through the filing of the petition. Here, the Secretary conceded that "petitioners had a reasonable basis, albeit slim, to initially pursue their claim." Resp't's Memo. at 6. A judicial official may accept a party's concession. Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present"); Abbott v. Sec'y of Health & Human Servs., 19 F.3d 39 (Fed. Cir. 1994) (Table) (text found at: 1994 WL 32656, at *5) ("the [Vaccine] Act contemplates normal procedures, applicable at both trial and appellate levels, that issues not raised are waived and that a tribunal may not force litigation of an issue that was waived, with limited exceptions not applicable here such as question of jurisdiction"); N. Am. Vaccine, Inc. v. Am. Cyanamid Co., 7 F.3d 1571, 1578 n.3 (Fed. Cir. 1993) ("we do not review what [a party] chooses to accept"); Howell v. Merit Sys. Prot. Bd., 785 F.2d 282, 285 (Fed. Cir. 1986) (the Department of Justice has authority to waive the merits of a case). Thus, the Swicks possessed a reasonable basis for the first period of time, that is, through the filing of the petition.

The second period of time begins with the filing of the petition and ends with the submission of Dr. Kozachuk's first report. Order, issued Apr. 30, 2018. The Secretary argued that the filing of Dr. Kozachuk's report caused a loss of

5

reasonable basis. Although not a model of clarity, the Secretary's argument against reasonable basis seems to contain three parts: (1) Dr. Kozachuk assumed the accuracy of the assertions in Ms. Swick's affidavit, (2) Dr. Kozachuk lacked qualifications, and (3) Dr. Kozachuk was not a credible expert.

In opposing reasonable basis, the Secretary argues that the Swicks "failed to rely upon facts in the record that could reasonably support a claim that J.R.S. suffered from an encephalopathy that could lead to death." Resp't's Memo. at 7. But, the Secretary seems to overlook Ms. Swick's affidavit. Although the Rule 4 report argued that Dr. Kozachuk's first report was insufficient to find that the Swicks are entitled to compensation "as a matter of law," the Secretary has cited no cases in which an expert's reliance on an affidavit causes the petition to lose reasonable basis. See Resp't's Memo. at 7-8, Resp't's Rep. at 8-9.[3]

In addition to arguing the lack of record (meaning medical record) support, the Secretary also contends that the "case lost a reasonable basis once no credible expert would and/or could support their claim." Resp't's Memo. at 7. Although not spelled out in so many words, the Secretary seems to imply that Dr. Kozachuk is not credible. Early in the litigation, the Secretary pointed out that Dr. Kozachuk is not board certified in neurology and has no special qualifications in immunology or pathology. Resp't's Rep. at 9-10. However, citing Harris v. Sec'y of Health & Human Servs., No. 93-333V, 2001 WL 530644 (Fed. Cl. Spec. Mstr. May 2, 2001); Mazur v. Merck & Co., Inc., 742 F. Supp. 239, 264 (E.D. Pa. 1990); and Osburn v. Anchor Labs., Inc., 825 F.2d 908, 915 (5th Cir. 1987), the Swicks demonstrated that doctors may offer opinions in fields outside their own specialty. Pet'r's Status Rep., filed May 20, 2014, ¶ 8. The Secretary did not address these cases in his memorandum on reasonable basis.

In short, the Secretary has not presented a persuasive argument that Dr. Kozachuk's first report was so deficient that the petition lost reasonable basis. The Secretary's concession that reasonable basis supported the filing of the petition is critical. With this starting point, it is difficult to see how the Swicks's submission of an expert report could cause them to lose reasonable basis. The objective evidence from the first phase, which the Secretary had accepted as sufficient to confer reasonable basis, matched the objective evidence in the first phase except

---

[3] Conceivably, the Secretary might have tried to undermine Dr. Kozachuk's opinion by contesting Ms. Swick's affidavit, based upon the discrepancies in Ms. Swick's affidavit and her statements apart from it. Compare exhibit 1 (affidavit) with exhibits A, B (blog posts). However, the Secretary has not challenged Ms. Swick's good faith. Resp't's Memo. at 6.

6

the Swicks had added a report from Dr. Kozachuk.  In effect, the Secretary's argument seems premised on an unstated assumption that Dr. Kozachuk's report was so unpersuasive and/or undeserving of any evidentiary weight that it actually weakened the Swicks's case.  Although Dr. Kozachuk's first report was far from persuasive, it was also not facially deficient.  Thus, the Swicks have met their burden of establishing reasonable basis for the second phase.

The third phase covers the period from the submission of Dr. Kozachuk's first report until the submission of his second report on August 19, 2014.  Exhibit 13.  The Swicks submitted the second report in response to the critique in the Secretary's Rule 4 report that Dr. Kozachuk's first report asserted facts not consistent with material contained in medical records created contemporaneously with the events being described.  Dr. Kozachuk indicated that he obtained much information about J.R.S. from his mother.  Again, Dr. Kozachuk did not cite pediatrician records or the police investigation.  See exhibit 13.  He also defended his expert qualifications, especially relating to PRES.  Id. at 2.

The Secretary argues that reasonable basis did not support the petition during the third phase.  In arguing against reasonable basis, the Secretary focuses mainly on Dr. Kozachuk's determination that J.R.S. suffered PRES.  The Secretary maintained that Dr. Kozachuk's "assertion was clearly speculative and not based on credible factual evidence."  Resp't's Memo. at 8.  But, the Secretary did not explain why the evidence on which Dr. Kozachuk did rely – his discussions with Ms. Swick – should be insufficient for reasonable basis.

Following the filing of Dr. Kozachuk's second report, the parties prepared for a fact hearing at which the special master could assess recollections.  The fact hearing took place on October 30, 2014.

After post-hearing briefing, the next phase of the litigation begins with the issuance of the Findings of Fact on January 7, 2016.  The Findings of Fact largely credited accounts about J.R.S.'s health that his parents gave to police investigators and presented in the blogs outside the context of litigation over their recollections offered as allegations in this case.  The Findings of Fact changed the analysis of reasonable basis because the assertions on which Dr. Kozachuk had relied were not accepted.

The Swicks were invited to obtain a supplemental report from Dr. Kozachuk and/or from additional experts.  Order, issued Jan. 21, 2016.  In response, the Swicks filed another report from Dr. Kozachuk on April 29, 2016.  Exhibit 21.  Although the Findings of Fact did not accept assertions from affidavits

7

on which Dr. Kozachuk had previously relied, Dr. Kozachuk continued to advance the PRES diagnosis. This was not reasonable. Murphy, 30 Fed. Cl. at 62 (ruling that the special master was not arbitrary in finding that reasonable basis for the petition did not exist when "the medical and other written records contradict the claims brought forth in the petition").

Dr. Kozachuk's April 29, 2016 report does not otherwise present objective support for the claim set forth in the petition. First, although Dr. Kozachuk diagnosed J.R.S. with PRES, Dr. Kozachuk never set forth the diagnostic criteria. This omission, in turn, hides other issues with PRES. For example, is PRES a diagnosis given to infants? If so, if PRES is diagnosed in the adults with imaging, did any imaging from J.R.S. support PRES? If PRES is diagnosed in adults based upon clinical symptoms, how do infants communicate their symptoms to doctors? Second, apart from constipation and associated fussiness, the only symptom that Dr. Kozachuk linked to PRES was a single episode of vomiting. But, Dr. Kozachuk did not attempt to explain why this vomiting was out of the ordinary for four-month-olds. See exhibit 21 at 3. Third, Dr. Kozachuk's diagnosis of PRES is not consistent with the doctor who made J.R.S.'s autopsy findings.

Beyond problems with PRES, Dr. Kozachuk repeats his opinion that SIDS is not an appropriate diagnosis. In doing so, Dr. Kozachuk recommended additional autopsy and neuropathological studies. Exhibit 21 at 3. Dr. Kozachuk's recognition that he needed help is appropriate. Yet, this acknowledgment reinforces one of the Secretary's points from his Rule 4 report – years earlier – that Dr. Kozachuk lacked the qualifications to offer opinions in areas such as neuropathology and immunology.

It is true that Dr. Kozachuk's lack of qualifications did not prevent a finding of reasonable basis for his first report. However, the situation following the issuance of the Findings of Fact is different in three respects. First, the Secretary did not object to a finding of reasonable basis for filing the petition. A logical consequence of this concession, as explained above, is that reasonable basis extends to encompass the times when Dr. Kozachuk's first and second reports were filed. Second, although a weak case from petitioners may pass the threshold for reasonable basis in the early stages of the case, petitioners must respond once deficiencies in their case are pointed out. Reasonable basis need not be measured at only one time. As a case changes during litigation, such as through the submission of new evidence, including expert opinions, a case may lose its reasonable basis. See Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994). Third, the Swicks's case did change with the Findings of Fact.

8

In total, these circumstances support a finding that the Swicks's case was no longer supported by reasonable basis beginning on January 7, 2016, the date the Findings of Fact were issued.[4] January 7, 2016, however, does not mark the absolute end of compensable attorney work. Even after that date, the Swicks's attorney should be compensated for a short amount of time used to wrap up the case. Curran v. Sec'y of Health & Human Servs., 130 Fed. Cl. 1, 8 (2017) (ruling that after the special master had found reasonable basis to file a petition but found reasonable basis was lost, the special master should also evaluate whether the petitioners should be reimbursed for work their attorney performed in drafting end-of-case pleadings). The Swicks are also entitled to work done on attorneys' fees.

Except for these discrete tasks after January 6, 2016, wrap-up and the fees petition, a finding of no reasonable basis precludes compensation for work done by the Swicks's counsel after January 6, 2016. See Chuisano, 2013 WL 6234660, at *1. For worked performed when reasonable basis did support the claims set forth in the petition, the Swicks are entitled to a reasonable amount of attorneys' fees and costs. The quantification of these two items is taken up next.

**IV.    Reasonable Amount of Attorneys' Fees**

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs. 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

---

[4] Selecting January 6, 2016, as the date on which reasonable basis ceased happens to avoid an analysis of two events that occurred later. On June 2, 2016, the Secretary presented evidence that the Maryland State Board of Physicians had reprimanded Dr. Kozachuk. Exhibit D. Nevertheless, the Swicks continued to rely on his opinion even with the knowledge of this reprimand. Also, on November 1, 2016, the Secretary filed an expert report from a neurologist, Dr. Kohrman. Exhibit E.

A. <u>Reasonable Hourly Rate</u>

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. <u>Avera</u>, 515 F.3d at 1349. There is, however, an exception (the so-called <u>Davis County</u> exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. <u>Id.</u> 1349 (citing <u>Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency</u>, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

Thus, under <u>Avera</u>, the determination of an attorney's hourly rate is a three-step process. "First, the hourly rate in the attorneys' local area must be established. Second, the hourly rate for attorneys in Washington, DC must be established. Third, these two rates must be compared to determine whether there is a very significant difference in compensation." <u>Masias v. Sec'y of Health & Human Servs.</u>, No. 99-697V, 2009 WL 1838979, at *4 (Fed. Cl. Spec. Mstr. June 12, 2009) (citing <u>Avera</u>, 515.3d at 1353 (Rader, J. concurring)), <u>mot. for rev. denied</u> (slip op. Dec. 10, 2009), <u>aff'd</u>, 634 F.3d 1283 (Fed. Cir. 2011), <u>corrected</u>, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013).

The Swicks request compensation for three attorneys, Richard Moeller, Jason Gann, and Nikki Nobbe (formerly Nikki Blazey), as well as the paralegal who assisted them, Melissa Jones. Mr. Moeller charged hourly rates of $265 (2012), $270 (2013), and $275 (2014-2018). Mr. Gann charged an hourly rate of $200 for all of his time, Ms. Nobbe (Blazey) charged an hourly rate of $180 for all of her time, and Ms. Jones charged an hourly rate of $70 for all of her time. These rates are reasonable. <u>Bell v. Sec'y of Health & Human Servs.</u>, No. 13-709V, 2017 WL 1034481, at *2 (Fed. Cl. Spec. Mstr. Jan. 31, 2017).

B. <u>Reasonable Number of Hours</u>

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. <u>See Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. <u>See Shea v. Sec'y of Health & Human Servs.</u>, No. 13-737V, 2015 WL 9594109, at *2 (Fed. Cl. Spec. Mstr Dec. 10,

10

2015) ("special masters are not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination … and certainly need not do so when Respondent has not attempted to highlight any specific alleged inefficiencies").

The attorneys' and paralegals' entries describe the activities with sufficient detail that the reasonableness of the work may be assessed. The number of hours requested is reasonable.

For the time period when the case had reasonable basis, the Swicks are eligible to receive compensation for the attorney and paralegal hours billed from the beginning of the case through January 6, 2016. For the wrap-up of the case, the Swicks are eligible to receive compensation for the hours billed from February 9, 2017, until February 27, 2018, that relate to routine matters. The Swicks will not be compensated for the hours billed relating to their attorney's preparation of the brief in lieu of a hearing. For filing a fees petition, the Swicks are eligible to receive compensation for the hours billed from March 2, 2018, until March 19, 2018.

For these reasons, the Swicks are awarded attorneys' fees in the amount of $46,631.00.

## V.    Reasonable Amount of Costs

In addition to seeking an award for attorneys' fees, the Swicks seek compensation for costs expended, $23,983.67 in attorneys' costs and $399.07 in costs they incurred personally. The costs that the Swicks personally incurred are reasonable. The attorneys' costs for routine items, such as medical records and traveling expenses, are also reasonable.

The bulk of the attorneys' costs are for reports Dr. Kozachuk prepared. For his first two reports, Dr. Kozachuk requested compensation at a rate of $400 for 36.25 hours. A reasonable hourly rate for Dr. Kozachuk's work is $225 per hour. Abbott v. Sec'y of Health & Human Servs., No. 10-485V, 2017 WL 2226614, at *10-11 (Fed. Cl. Spec. Mstr. Apr. 26, 2017), mot. for review denied on non-relevant grounds, 135 Fed. Cl. 107 (2017).

Dr. Kozachuk's third report is so fundamentally deficient that it cannot satisfy the reasonable basis standard. Therefore, the Swicks will not be reimbursed for his work on that report.

Following the submission of Dr. Kozachuk's third report, the Swicks's attorneys did not incur any costs. Thus, the finding that the Swicks's case lost a reasonable basis after January 6, 2016, does not further reduce the amount of reasonable costs.

For these reasons, the Swicks are awarded costs in the amount of $10,745.49.

\* \* \*

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). The undersigned GRANTS the Swicks's motion to the extent described above and finds $57,376.49 ($46,631.00 in fees, $10,745.49 in attorneys' costs, and $399.07 in petitioners' costs) to be a reasonable amount for all attorneys' fees and costs incurred. This amount shall be paid as follows:

a. **A lump sum of $56,977.42 in the form of a check made payable to petitioners and petitioners' attorney, Richard H. Moeller, for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).**

b. **A lump sum of $399.07 in the form of a check made payable to the petitioners for costs incurred personally available under 42 U.S.C. § 300aa-15(e).**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.